Estate of Frank E. Harley, Deceased, Mabel Harley, Executrix, and Mabel Harley, Individually, Petitioners v. Commissioner of Internal Revenue, Respondent.
Estate of Harley v. Commissioner
Docket No. 62653.
United States Tax Court
T.C. Memo 1959-165; 1959 Tax Ct. Memo LEXIS 82; 18 T.C.M. (CCH) 717; T.C.M. (RIA) 59165; August 27, 1959
*82 Frank E. Harley, for the petitioners. Arthur Pelikow, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent determined deficiencies in income tax and additions to tax under section 294(d)(2) of the Internal Revenue Code of 1939 against the petitioners as follows: Addition
Year
Deficiency
to Tax
1951
$ 755.00
$ 55.85
1952
6,642.40
382.81
The questions for determination are (1) whether petitioners erred in failing to report in their income tax return for 1952, $14,284.38 of the amount received by Frank E. Harley in that year from the State of New Jersey under a contract covering engineering services on a highway project known as the Garden State Parkway; (2) whether respondent erred in disallowing a deduction of $1,187.27 claimed by petitioners for 1951, relating to an engineering contract, in the performance of which errors had been committed by one of Frank E. Harley's employees; and (3) whether the respondent erred in disallowing deductions, or portions of deductions, claimed by petitioners as automobile operation expense and automobile depreciation. All other issues have been disposed *83 of by agreements and concessions of the parties. Findings of Fact Some of the facts have been stipulated and are found as stipulated. Frank E. Harley, now deceased, [1] and Mabel Harley were husband and wife, and during the years in question resided in Wyckoff, New Jersey. They filed joint income tax returns for the taxable years 1951 and 1952 with the collector of internal revenue for the fifth district of New Jersey. Frank E. Harley was a civil engineer and practiced his profession "anywhere," but primarily in New Jersey. During the taxable years 1951 and 1952 and in years prior thereto, he used a cash basis method of accounting. He prepared and filed his returns by calendar years. In 1952 Harley entered into a contract with the Highway Department for the State of New Jersey for civil engineering work to be performed on a designated portion of the Garden State *84 Parkway. The work covered by the contract was to be done by Harley and his employees on what was described as "a cost plus basis and a fixed fee of $3,000.00 per month." Payment was to be made semi-monthly on vouchers submitted by Harley. Included in the vouchers would be Harley's actual payroll costs, items of office expense, equipment rental, other miscellaneous items at cost and $1,500 of the monthly fixed engineering fee of $3,000. To allow for costs incurred by Harley, such as social security taxes, unemployment and accident insurance, allowance for holidays, sick leave and vacations, an amount equal to 20 per cent of actual payroll was included. In major part, the work under the contract was performed in the last half of 1952 and the first half of 1953. The semi-monthly vouchers for payment under the contract were prepared and submitted by Harley to the State from three to ten days following the first and fifteenth days of each month. They would be checked by the auditors of the Highway Department and payment would be received by Harley some three to seven days after submission of a voucher. Payroll and various other items of expense were covered in the vouchers in amounts *85 representing actual expenditures. Such was not the case, however, with respect to social security taxes and various of the items for which the allowance equal to 20 per cent of payroll was made, and to the extent, if any, that the 20 per cent was less than or exceeded the actual cost to Harley for the items in question, there was no accounting therefor between Harley and the Highway Department. Some of these items did not become due, and were not in fact paid, until some later date or dates. Social security taxes, for instance, for October, November and December were not payable or paid until January of the following year. During 1952 Harley received payment based on semi-monthly vouchers under the Garden State Parkway contract in the aggregate sum of $224,324.55. Of that amount, petitioners reported as their 1952 income under the contract the sum of $210,040.17. The $14,284.38 not reported represented Harley's estimate of the expenses to which the 20 per cent of actual payroll allowance related, which though incurred in 1952 would not be paid until 1953. The $14,284.38 so withheld in reporting 1952 income was subsequently included in the 1953 return as 1953 income. The expenses *86 to which the 20 per cent of actual payroll allowance related which had been incurred in 1952 but which were paid in 1953 were taken as deductions on the 1953 return of petitioners in the amounts actually paid. [2]
The petitioners did not report in their 1952 return the amount received by Harley in January 1953 on the voucher for the period December 15 through 31, 1952, although it covered the work which had been done in 1952 and the payroll and other expenses covered thereby which had in fact been paid in 1952 were included in the deductions claimed on the 1952 return. In 1951 Harley was employed to do some engineering work for a builder. In staking out the lines for some of the houses, errors were made by one of Harley's employees, resulting in a slight encroachment or encroachments on the correct building line. As a result of these errors, Harley incurred and expended an added amount of $1,187.27. Most of these expenditures represented wages paid to his men. One item of $144, however, represented a fine paid by Harley in municipal *87 court in respect of the errors which had been committed. Harley did not, or was unable to, collect from the client the further amount of $1,187.27 to cover these extra or additional expenditures. Being of the view that a deductible loss of $1,187.27 had been thereby sustained, petitioners claimed deduction therefor on their 1951 return. Such portions of the said amount as represented wages paid by Harley to various of his employees were elsewhere deducted in the return, in respect of which the respondent made no adjustment or disallowance in his determination of deficiency for that year. Harley's principal office was approximately seven miles from his home. He traveled to and from his home by automobile. During part if not all of the taxable years, he maintained another office seventy miles from his main office, this second office being better located with respect to the work under the Garden State Parkway contract. In the conduct of his engineering operations, he traveled by automobile, moving about from place to place in the course of a day's work. During the first six months of 1951, Harley drove a 1950 model Buick automobile, for which, on some undisclosed date, he had paid *88 $2,500. In his income tax return for 1950, he claimed and was allowed $625 as depreciation on the 1950 Buick, such amount being based on a four-year useful life for the car. On July 1, 1951, he bought a 1951 Buick for $2,545.89, of which $1,245.89 was paid by turning in the 1950 Buick as part of the purchase price. In their 1951 income tax return, petitioners claimed $620.89 as depreciation on the 1950 Buick, which had been used during the first six months of the year, and $636.48 on the 1951 Buick, which was used during the last six months of the year, the $636.48 being 25 per cent of the purchase price of $2,545.89. On their 1952 return, petitioners also deducted $636.48 for depreciation on the 1951 Buick for the full twelve months. Neither the 1950 nor the 1951 Buick was available to Harley's wife for her personal use, but on occasions Harley would drive her to her desired destinations. When doing her own driving, she would borrow a car from the office. According to the 1951 return, and in addition to the Buicks, Harley owned and used in his operations, two station wagons and an Oldsmobile, and, according to the 1952 return, three additional station wagons. The station wagons *89 were normally used by the surveying crews. Exclusive of the depreciation deductions claimed, petitioners on their return for 1951 claimed deductions for car operation expense in the amount of $2,288.48, and in their 1952 return, in the amount of $3,256.35. These amounts were after excluding from the gross amounts of such costs $96 in each year as the portion of the expense attributable to personal use of the cars, the said amount being shown as representing 1,200 miles of driving at 8 cents per mile. The deductions claimed were shown on the returns as covering such items, as tires, license plates, garage rent, repairs, revarnishing cars, gasoline and oil. In determining the deficiency for 1951, the respondent disallowed $500.12 of the $2,288.48 automobile expense deduction claimed. He also disallowed the entire $636.48 which had been deducted as depreciation on the 1951 Buick, which was used by Harley during the last six months of the year. In determining the deficiency for 1952, the respondent disallowed $742.09 of the $3,256.35 automobile expense deduction which had been claimed. He also disallowed the deduction of $636.48 which had been claimed as depreciation on the 1951 *90 Buick used by Harley during 1952. Opinion The proper disposition of the issues remaining for decision is, we think, quite definitely and clearly indicated by the facts, and little discussion would appear necessary. Harley kept his accounts and reported his income on the basis of cash receipts and disbursements and by calendar years. A consequence of such accounting for and reporting of income is that items of gross income must be reported for the year in which they are received, whereas some of the expenses of earning such income may not be deductible until the succeeding year, because not paid until then, but, as in this case, other items of gross income, even though earned, may not be reportable until the succeeding year, because not received until then, even though the expenses attributable thereto are currently deductible in full, because they have in fact been paid. Here the $14,284.38 not only was earned in 1952, but was received in 1952. Accordingly, we conclude and hold that it was 1952 income, and the respondent did not err in his determination to that effect. Similarly, the respondent did not err in his disallowance of the $1,187.27 loss deduction claimed for 1951. *91 The basis for the deduction was Harley's failure or inability to collect from his client the added expenses which, due to the errors of one of his employees, had been incurred in completing performance of the work for which he had been employed. It appears that the amounts actually expended by Harley in correcting the errors were otherwise deducted on the return as expenses of doing business, and the deductions so claimed were not disturbed by the respondent in his determination. To that extent, effect was given to such added expenses in arriving at petitioners' net income, and Harley's failure to collect a further sum from his client cannot give rise to a loss deduction for these same costs. The respondent's determination is sustained. With respect to automobile operating expenses, the facts show that in each of the taxable years, Harley owned and operated several automobiles; that the automobiles were used primarily in connection with his engineering activities; and that at least two of the cars were at times put to the personal uses of petitioners. The respondent has determined that $500.12 of the $2,288.48 deducted for 1951 and $742.09 of the $3,256.35 deducted for 1952 were *92 not shown to have been expended in the earning of income. The $2,288.48 deducted for 1951 and the $3,256.35 deducted for 1952 were exclusive of the $96 of automobile expense for each year which petitioners treated as the cost of the use of the automobiles for personal purposes and claimed no deduction therefor. No records were maintained whereby a segregation of automobile operating costs between business use and personal use could be made, and the allocations by petitioners were made by treating an arbitrary mileage of 1,200 miles as representing the car miles driven for personal uses and the cost thereof as 8 cents per mile, leaving the remainder to be treated as business operation and cost. Applying the reasoning in Cohan v. Commissioner, 39 Fed. (2d) 540, we are unable to say that the evidence of record is adequate to show that the portion of the automobile expense incurred for personal uses was any less than respondent's determination indicates. His determination is sustained. For the last six months of 1951 Harley used in his business a 1951 Buick automobile, for which he had paid $2,545.89, and as depreciation thereon, petitioners deducted $636.48 on their 1951 *93 return, which amount was 25 per cent of cost. The respondent disallowed the claimed deduction in full. The facts show that for 1950 Harley claimed and had been allowed a depreciation deduction of 25 per cent of cost on a predecessor Buick. The respondent makes no claim that the depreciation allowance of 25 per cent of cost for a full year would be excessive, and the petitioners have made no showing that in this instance any greater amount would be justified. It is accordingly held that the petitioners should be allowed a depreciation deduction on the said Buick based on a four-year useful life and an ownership and operation of the car for only six months. The facts show that the same automobile was owned and operated by Harley in the conduct of his engineering work throughout 1952 and that petitioners on their 1952 return again claimed $636.48, or 25 per cent of cost, as a depreciation deduction thereon. In the face of the showing by petitioners of such ownership and use of the automobile in 1952, the respondent has offered nothing to justify the disallowance of the deduction claimed by petitioners on their return. In his argument on brief, the matter is not mentioned. The petitioners' *94 claim is accordingly sustained. Decision will be entered under Rule 50. Footnotes
1. After the trial herein, Frank E. Harley died. His wife duly became the executrix of his estate, and upon motion properly filed herein and granted on June 4, 1959, the Estate of Frank E. Harley, Deceased, Mabel Harley, Executrix, was substituted as petitioner in the place and stead of Frank E. Harley, deceased.↩
2. The amount of actual payment of such items as computed by Harley's secretary or bookkeeper for the purpose of the trial herein, was $14,016.83.↩